IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIOGENES LIMITED and<br>COLOSSUS (IOM) LIMITED,<br><br>    Plaintiffs,<br><br>  v.<br><br>DRAFTKINGS, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 21-1695 (MN) (CJB)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>FIRST AMENDED COMPLAINT</u>**

OF COUNSEL:

G. Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

Robert L. Maier
Joshua M. Friedman
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112-4498
(212) 408-2500

Clarke Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
(214) 953-6500

March 29, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant DraftKings, Inc.*

**TABLE OF CONTENTS**

Page

I. ARGUMENT ............................................................................................................................ 1

    A. Claim 1 of the '439 Patent Is Representative of all Asserted Claims ..................... 1

    B. The Presumption of Validity and Prior Examination at the USPTO Does Not Preclude a Finding of Invalidity at the Pleadings Stage ......................................... 2

    C. The Asserted Claims Are All Directed to an Abstract Idea (*Alice* Step 1) ............. 3

        1. The "unique technical functionality" does not confer patent eligibility ..... 4

        2. The Asserted Claims have longstanding brick-and-mortar analogs ........... 6

    D. The Absence of Preemption Is Not Indicative of Eligibility .................................. 6

    E. The Asserted Claims Do Not Provide any Inventive Concept (*Alice* Step 2) ........ 7

        1. The purported improvements achieved by the Asserted Claims are merely longstanding business concerns ................................................................. 7

        2. The Asserted Claims recite well-known, routine, and conventional non-technical steps ........................................................................................... 9

II. CONCLUSION ...................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alice Corp. v. CLS Bank Inc.*,
 573 U.S. 208 (2014) ...................................................................................................3, 4, 5, 6

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
 788 F.3d.1371 (Fed. Cir. 2015) .................................................................................................7

*Audatex N. Am. Inc., v. Mitchell Int'l, Inc.*,
 703 F. App'x 986 (Fed. Cir. 2017) ...........................................................................................6

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018) .................................................................................................2

*Bilski v. Kappos*,
 561 U.S. 593 (2010) ...................................................................................................................3

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 927 F.3d 1306 (Fed. Cir. 2019) ...............................................................................................10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019) ...................................................................................................5

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
 760 F. App'x 1013 (Fed. Cir. 2019) .........................................................................................3

*Customedia Techs., LLC v. Dish Network Corp.*,
 951 F.3d 1359 (Fed. Cir. 2020) .................................................................................................6

*DDR Holdings, LLC v. Hotels.com L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................7, 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016) .......................................................................................4, 5, 10

*Ficep Corp. v. Peddinghaus Corp.*,
 C.A. No. 19-1994-RGA, 2021 WL 254104 (D. Del. Jan. 26, 2021) ........................................9

*In re Smith*,
 815 F.3d 816 (Fed. Cir. 2016) ...................................................................................................3

*Intellectual Ventures I LLC v. Capital One Bank*,
 792 F.3d 1363 (Fed. Cir. 2016) .......................................................................................4, 6, 10

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
 C.A. No. 19-1903-RGA, 2020 WL 3640064 (D. Del. July 6, 2020) .......................................8

*PersonalWeb Tech. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ...................................................................................................6

*RaceTech, LLC v. Kentucky Downs, LLC*,
   167 F. Supp. 3d 853 (W.D. Ky. 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir.
   2017) ........................................................................................................................................4

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .................................................................................................3

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) .................................................................................................7

*Treehouse Avatar LLC v. Valve Corp.*,
   170 F. Supp. 3d 706 (D. Del. Mar. 22, 2016) ...........................................................................9

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ...................................................................................................3

**STATUTES**

35 U.S.C. § 101 ..........................................................................................................................9, 10

35 U.S.C. § 282(a) ............................................................................................................................3

**OTHER AUTHORITIES**

Fed. R.. Civ. P. 12(b)(6) ...................................................................................................................3

DraftKings has shown that all 31 Asserted Claims of the eight Asserted Patents are invalid for failing to claim patent-eligible subject matter. D.I. 17. All the challenged claims seek to claim the same abstract idea: hedging financial risk in connection with a wager by offering buy-out offers prior to the completion of a wagering event. Colossus's Opposition (D.I. 20) does not compel a different conclusion. The Amended Complaint should be dismissed with prejudice.

I.  ARGUMENT

   A.  Claim 1 of the '439 Patent Is Representative of all Asserted Claims

In its Opening Brief, DraftKings established that, for purposes of the eligibility analysis, claim 1 of the '439 Patent is representative of the thirty-one claims identified in the First Amended Complaint ("FAC") as allegedly infringed by DraftKings (the "Asserted Claims"). D.I. 17 at 4-7. Colossus argues that DraftKings' representativeness analysis is deficient because DraftKings did not show that claim 1 "is representative of all *376* claims in suit" (i.e., all claims of all Asserted Patents). D.I. 20 at 6. But Colossus's FAC identifies 31 claims as allegedly infringed, and charts only one claim from each patent against the accused products. It is the FAC that "defines this as a 31-claim case" (*id.*), and claim 1 of the '439 Patent is representative of those claims. To the extent Colossus purports to have stated claims for infringement as to the other 345 claims, those allegations should be dismissed as not supported by plausible factual allegations.[1]

As previously explained, claim 1 of the '439 Patent is representative because (1) all of the Asserted Claims are substantially similar and directed to the same abstract idea of hedging financial risk in connection with a wager, and (2) the minor differences between the claims are immaterial and do not change the focus of the claims to anything other than the abstract idea.

---

[1]  The only way the limited allegations in the FAC could plausibly support allegations of infringement as to the remaining 345 claims is if those claims are substantially similar to the identified Asserted Claims, in which case claim 1 of the '439 Patent is representative.

D.I. 17 at 5-7, Appx. A (illustrating differences among asserted independent claims are merely minor, non-technical variations on same core concept).[2]

The Federal Circuit has confirmed that courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claims," which Colossus has not. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Colossus's identification of three purportedly non-representative claims actually supports the representativeness of claim 1. First, Colossus argues that claim 68 of the '516 Patent, which was specifically addressed in DraftKings' motion (D.I. 17 at 7), "covers an entire wagering apparatus"—unsuccessfully trying to bring the abstract idea into the physical realm—but fails to explain how this renders claim 68 meaningfully distinct from claim 1 for purposes of this analysis. The preambles of claim 68 of the '516 Patent and claim 1 of the '439 Patent are similar, the former reciting "***placement of a wager on an event comprised of one or more legs***" and the latter reciting a method for a "***wagering event [that] comprises a defined number of legs***." Second, Colossus's reliance on claim 104 of the '716 Patent is misplaced, as claim 104 of the '716 Patent *is not asserted* in the FAC. Finally, Colossus's allegation that claim 16 of the '779 Patent captures "real time buy out offers" merely confirms that claim 16 is substantially similar and linked to the same abstract idea as representative claim 1—hedging financial risk by making buy-out offers prior to the completion of a wagering event. Claim 1 of the '439 Patent thus should be treated as representative.

**B.     The Presumption of Validity and Prior Examination at the USPTO Does Not Preclude a Finding of Invalidity at the Pleadings Stage**

Colossus suggests that DraftKings' motion should be denied because "[t]he Asserted

---

[2]    DraftKings also explained that the dependent claims fall into one of three categories, none of which change the focus of the claim such that claim 1 of the '439 Patent would not be representative. D.I. 17 at 4, 7.

Patents were found to be patent-eligible by the USPTO," and are thus presumed valid. D.I. 20 at 1, 4. The mere fact that claims are "presumed valid" under 35 U.S.C. § 282(a), however, is no bar to finding claims ineligible at the Rule 12(b)(6) stage. Indeed, the Federal Circuit has repeatedly affirmed findings of invalidity at this stage based on ineligibility and rejected the suggestion that courts should defer to the Patent Examiner's decision to allow certain claims.[3] *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (collecting cases). Resolving eligibility at this stage minimizes "expenditure of time and money by the parties and the court" and "protects the public" from illegitimate patents, such as those asserted by Colossus. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring).

### C. The Asserted Claims Are All Directed to an Abstract Idea (*Alice* Step 1)

All the Asserted Claims are directed to hedging financial risk in connection with a wager. D.I. 17 at 1, 8-16. Colossus never meaningfully disputes that each of the Asserted Claims embodies this abstract concept and concedes that the claims "have limitations for gaming and cashing out a bet." D.I. 20 at 9. Generally, the Supreme Court's decisions in *Alice Corp. v. CLS Bank Inc.*, 573 U.S. 208, 219-21 (2014), and *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010), take a dim view of financial claims directed to an abstract idea, like those at issue here. The Asserted Claims are also closely analogous to the claims directed to "rules for a wagering game" held invalid by the Federal Circuit. *In re Smith*, 815 F.3d 816, 817-19 (Fed. Cir. 2016).

Colossus argues that "'the claims are . . . rooted in computer networking and specifically online gaming technology,' that have the capability to '***process data from multiple sources in real time to continuously generate an accurate value for a cash out offer that best represents the effect of instantaneous odds on the real time value of a bettor's ticket***.'" D.I. 20 at 8 (emphasis

---

[3] *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019).

3

added). This merely restates the abstract idea—hedging financial risk purportedly *faster, continuously, or instantaneously*. As discussed below, the Asserted Claims merely use generic computer elements to implement that abstract idea. Colossus fails to identify any *specific technological improvement* within the elements of the claim language because there is none. Any purported improvements (*e.g.*, increased speed, efficiency, or accuracy) merely arise from the use of a computer to implement the abstract idea and do not render the claims eligible. *See Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1370 (Fed. Cir. 2016) ("IV II").

### 1. The "unique technical functionality" does not confer patent eligibility

Colossus's argument that the claims focus on "unique technical functionality" lacks merit. D.I. 20 at 7. First, although Colossus argues the claims are "neither directed to a fundamental economic practice nor mathematics" (*id.* at 8), hedging financial risk—to which the claims are directed—is an abstract fundamental economic practice. *Alice*, 573 U.S. at 219. Regardless, "[t]he abstract idea principle has also invalidated patent claims beyond those involving mathematical formulas and economic principles . . . . [C]ourts have also applied the abstract idea principle to invalidate patents related to recreational wagering." *RaceTech, LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 862 (W.D. Ky. 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir. 2017).

Second, to the extent the Asserted Claims enable betting odds to be updated in real time, this does not render them eligible. D.I. 20 at 8; *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355-56 (Fed. Cir. 2016). At most, this argument applies to only one of the eight Asserted Patents (the '779 Patent), but it too must fail as no technological concept can be found in the claim language for how the data is continuously retrieved in real time or recalculated. For example, in *Elec. Power.*, the Federal Circuit held that claims were directed to an abstract idea even though they enabled real-time data processing that could not be achieved by a human, when the processing was enabled by generic computer components. *Id.* at 1356. Colossus's assertion

4

that a human could not possibly perform the recited functions is unsupported attorney argument and in no way "roots" the claimed abstract idea in computer networking. D.I. 20 at 8. As *Elec. Power* makes clear, the ability to process data in real time does not render patentable otherwise abstract ideas like those to which the Asserted Claims are directed. *See id.* at 1355-56.

Third, Colossus argues that the "focus" of the Asserted Claims is not "on the rules of when a buy out offer is determined," but rather "entire methods, systems, or devices rooted in computer networking and specifically online gaming technology." D.I. 20 at 8. But aside from the "rules of when a buy out offer is determined," the Asserted Claims recite only generic computer components, such as wagering input devices, system controllers (*see, e.g.,* '439 Patent, Cl. 1), a server system, and a display (*see e.g.*, '516 Patent, Cl. 68). Such generic computer components do not save a claim from being abstract. *See Alice*, 573 U.S. at 221. The Asserted Claims are not "rooted" in technology; they simply use generic computer components to implement the abstract idea of hedging financial risk. The Asserted Claims' preambles, to which Colossus points, confirm as much. *See supra* § I(A). These claims reciting generic components such as a "wagering apparatus," "wagering devices," or "a system" for implementing an abstract idea remain abstract.

Finally, Colossus's allegation that the Asserted Claims "process data from multiple sources in real time to continuously generate an accurate value for a cash out offer that best represents the effect of instantaneous odds on the real time value of a bettor's ticket" is unsupported by any analysis showing that such features are *actually found in the claim limitations of Asserted Claims*, as is required under Federal Circuit law. *See* D.I. 20 at 8; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (fundamental consideration of eligibility inquiry is "the language of the Asserted Claims"). Moreover, even Colossus's description of the claims amounts to nothing more than collecting and processing information, functionality courts have repeatedly held is an abstract idea. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353-54.

5

### 2. The Asserted Claims have longstanding brick-and-mortar analogs

Colossus contends the Asserted Claims are "materially different" from the longstanding analogous activities in the casino industry, such as blackjack surrender and bettor's insurance. But the only alleged distinction is that human actors cannot recalculate betting odds in real time. D.I. 20 at 10. This alleged advantage stems from simply applying the abstract idea on a computer or networking multiple computers. This has repeatedly been ruled insufficient to save an abstract claim at *Alice* step 1. *See, e.g.*, *IV II*, 792 F.3d at 1370; *see also PersonalWeb Tech. LLC v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021) (reaffirming *IV II*'s holding "that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea"); *Customedia Techs., LLC v. DISH Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020); *Audatex N. Am. Inc., v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 990 (Fed. Cir. 2017) ("[U]se of the Internet to increase the speed and efficiency of an abstract process . . . is not enough."). The Federal Circuit recently elaborated on *IV II* by explaining that

> The only improvements identified in the specification are generic speed and efficiency improvements inherent in applying the use of a computer to any task. Therefore, the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool. ***This is not an improvement in the functioning of the computer itself.***

*Customedia*, 951 F.3d at 1364-65 (emphasis added).

The Federal Circuit has been "clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *IV II*, 792 F.3d at 1370. To the extent Colossus argues the claims enable gaming operators to efficiently update data (*i.e.*, betting odds) in real time, this has no inventive quality.

### D. The Absence of Preemption Is Not Indicative of Eligibility

Colossus's argument that, because the Asserted Claims do not preempt online wagering, they are patent eligible, is baseless. D.I. 20 at 12. "While preemption may signal patent ineligible

6

subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).[4]

### E. The Asserted Claims Do Not Provide any Inventive Concept (*Alice* Step 2)

#### 1. The purported improvements achieved by the Asserted Claims are merely longstanding business concerns

Colossus's arguments with respect to *Alice* Step 2 also fail, as they rely entirely on references to the specification and FAC, but *not on the actual language of the claims themselves*, which *do not capture* any such improvements. *See* D.I. 20 at 13-17; *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves."). And the alleged improvements relate only to well-known, conventional business techniques for attracting and retaining customers—something relevant to virtually any commercial venture. D.I. 20 at 14-15.

Colossus argues at length that the ideas described in the **specifications** improve "bettor confidence, enjoyment, and duration of play," which in turn increases "wagering site 'stickability'"—in short, that the ideas in the specifications aim to improve customer retention in order to increase profits. *Id.* at 14. This is not a *technical* improvement—it is the goal of essentially every business in human history. Regardless, Colossus fails to tie any supposed "stickability" improvement to the *language of the claims themselves*.

Colossus's attempt to analogize this case to *DDR Holdings* falls flat. The patents-at-issue in *DDR* were held not abstract because they solved a customer-retention problem specific to the internet—**not** because they improved customer retention, which is not a problem unique to the

---

[4] DraftKings did not argue that the Asserted Claims preempt the broad field of "online wagering," as Colossus claims. D.I. 20 at 13 ("Colossus's claims do not preempt online wagering."). The Asserted Claims, however, do raise significant preemption concerns for the narrower "buy out" functionality. *See* D.I. 17 at 20.

7

internet. *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In particular, the claims at issue in *DDR* were directed to "generating a composite web page that combine[d] certain visual elements of a 'host' website with content of a third-party merchant. For example, the generated composite web page may combine the logo, background color, and fonts of the host website with product information from the merchant." *Id.* at 1248. This was a unique, technical improvement of a website because users of "routine, conventional [websites] would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink"; thus, this problem and the claimed solution only arose in an internet web page environment. *Id.* at 1257. The abstract idea of "customer retention" was specifically claimed in the form of an inventive computer interface that allowed the user to remain on the host page after clicking on an ad. Therefore, the claims in *DDR* were patent eligible *despite* the fact that they involved the business concern of customer retention—not because of it.[5] *Id.* at 1259.

Colossus's comparison to *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, C.A. No. 19-1903-RGA, 2020 WL 3640064, at *3 (D. Del. July 6, 2020), is also inapposite. *Peloton* did not turn on whether the patents-at-issue solved "rider boredom," but rather that the solution was "not well-understood, routine, or conventional at the time of the invention." *Id.* For example, the claims at issue in *Peloton* recited means for "displaying performance parameters so that users of both live and archived classes can compete with one another" and "permit[ting] two people in different locations to take an archived class at the same time and to compete against each other in real time, with their respective performance parameters being displayed to each other." *Id.* By contrast, the Asserted Claims recite well-known means for hedging risk—in the form of a buy out

---

[5] Colossus argues that the Asserted Claims recite "an entirely new gaming network." D.I. 20 at 14. This overly-broad mischaracterization of the claims is belied by the specification's description of using conventional components to implement the abstract idea.

8

or cash out—long used in the field of gambling and sports betting. See D.I. 17 at 19.

Colossus's reliance on *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706 (D. Del. Mar. 22, 2016), and *Ficep Corp. v. Peddinghaus Corp.*, C.A. No. 19-1994-RGA, 2021 WL 254104 (D. Del. Jan. 26, 2021), is also unavailing. D.I. 17 at 16-17. In *Treehouse*, 170 F. Supp. 3d at 721, the Court found the claimed invention was rooted in technology because the claims were directed to storing and accessing audio and visual image data that was used to customize an online computer image of a character avatar—thus, no pre-computer analog existed.

In *Ficep*, 2021 WL 254104 at *8, the Court found the challenged claims were inventive because they "identify intersection parameters in a fundamentally different way than what a human was doing in the prior art[;] this [makes] a difference from a patent eligibility perspective." In *Ficep*, the claimed invention operated fundamentally different from humans because it "scribed lines onto the steel components that indicate where one steel component is supposed to connect to another steel component." *Id.* at *7. By contrast, a human operator would analyze "two dimensional drawings and then [use] a tape measure to manually make marks on a component"; thus, the automated process and the human process were fundamentally different. ***As Colossus admits***, however, the Asserted Claims' alleged "innovation" is that they automate the calculation of betting odds in real time. This is something every gambler does; a computer merely makes this faster. That is not an "inventive concept" under § 101.

### 2. The Asserted Claims recite well-known, routine, and conventional non-technical steps

Colossus finally argues that the Asserted Claims do not recite well-known, routine, or conventional steps because they allegedly recite a combination of computer components that "function such that 'cash-in buy back may also operate during live play and offer continuous cash-in ability *as soon as it is technically possible*.'" D.I. 20 at 18. But Colossus never quotes from a

9

single claim to demonstrate its allegedly "novel arrangement of components." Rather it relies on the FAC's *recharacterization* of all of "the claims." *See id*. Regardless, using generic computer components to increase the speed of a process does not provide an inventive concept. *See IV II*, 792 F.3d at 1370 ("Turning to the second step of *Alice,* here there is no inventive concept that would support patent eligibility [because] merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

Colossus's reliance on *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), is misplaced. D.I. 20 at 19. In *Cellspin*, the asserted patents passed Step 2 of the *Alice* analysis because they *claimed* (i) a unique arrangement of computer components[6] and (ii) specific, non-generic communication protocols.[7] *Id.* at 1318-19. By contrast, the Asserted Claims merely recite (i) generic computer components in a conventional arrangement, and (ii) the abstract idea of hedging wagering risk. Therefore, the Asserted Claims fail Step 2 of the *Alice* analysis.

## II.  CONCLUSION

The Asserted Claims of the '439, '341, '516, '716, '338, '969, '822, and '799 Patents are invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101. DraftKings respectfully requests that the Court grant its motion and dismiss with prejudice.

---

[6]   "But even assuming that Bluetooth was conventional at the time of these inventions, implementing a well-known technique with particular devices in a specific combination, like the two-device structure here, can be inventive." *Cellspin*, 927 F.3d at 1318.

[7]   "It was not until 2009 or later when the leading tech companies, such as Facebook and Google, started releasing HTTP APIs for developers to utilize a HTTP transfer protocol for mobile devices." *Cellspin*, 927 F.2d at 1318-19.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Rodger D. Smith II* |
| | _____ |
| OF COUNSEL: | Rodger D. Smith II (#3778) |
| | 1201 North Market Street |
| G. Hopkins Guy, III | P.O. Box 1347 |
| BAKER BOTTS L.L.P. | Wilmington, DE  19899 |
| 1001 Page Mill Road Building One, Suite 200 | (302) 658-9200 |
| Palo Alto, CA  94304-1007 | rsmith@mnat.com |
| (650) 739-7500 | |
| | *Attorneys for Defendant DraftKings, Inc.* |
| Jamie R. Lynn | |
| BAKER BOTTS L.L.P. | |
| 1299 Pennsylvania Avenue, N.W. | |
| Washington, DC  20004-2400 | |
| (202) 639-7786 | |
| | |
| Robert L. Maier | |
| Joshua M. Friedman | |
| BAKER BOTTS L.L.P. | |
| 30 Rockefeller Plaza | |
| New York, NY  10112-4498 | |
| (212) 408-2500 | |
| | |
| Clarke Stavinoha | |
| BAKER BOTTS L.L.P. | |
| 2001 Ross Avenue, Suite 900 | |
| Dallas, TX  75201-2980 | |
| (214) 953-6500 | |

 March 29, 2022

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 29, 2022, upon the following in the manner indicated:

Brian A. Biggs　　　　　　　　　　　　　　　　　　　　　　*VIA ELECTRONIC MAIL*
DLA PIPER LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Paul A. Taufer　　　　　　　　　　　　　　　　　　　　　　*VIA ELECTRONIC MAIL*
Michael L. Burns
Steven M. Kellner
Gregory Ferroni
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street
Philadelphia, PA  19103
*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Rodger D. Smith II*

　　　　　　　　　　　　　　　　　　　　　　　Rodger D. Smith II (#3778)