MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

RODGER D. SMITH II
(302) 351-9205
rsmith@morrisnichols.com

July 1, 2022

The Honorable Christopher J. Burke                 *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *Diogenes Limited, et al. v. DraftKings, Inc.,*
              C.A. No. 21-1695 (MN) (CJB) (D. Del.)

Dear Magistrate Judge Burke:

Pursuant to the Court's June 24, 2022 Order, Defendant DraftKings Inc. ("DraftKings") submits this letter responding to the questions in the above-referenced Order for the July 8, 2022 hearing on DraftKings' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D.I. 17.

**(1)  Which Supreme Court or Federal Circuit case is most similar to the challenged claim(s)?  That is, each party is to identify which case provides the best analogy if this Court is to compare the claim(s) at issue in the relevant Section 101 Motion to claims previously found to be patent (in)eligible by a higher court.**

For each of the Asserted Claims, the most analogous case is *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014),[1] which addressed claims related to a computer-implemented scheme for "***the management of risk relating to specified, yet unknown, future events***" that were "[l]ike the [fundamental economic practice of] ***risk hedging***" found abstract by the Court in *Bilski*.  *Alice*, 573 U.S. at 212, 219, 221.  Under step 1 of the § 101 analysis, the Court found that the claims were directed to the abstract idea of "intermediated settlement," which has "no meaningful distinction" from the "concept of risk hedging in *Bilski*."  *Id.* at 221.  The Asserted Claims at issue here are similarly directed to a generic, computer-implemented technique of risk hedging that "provide[s] the player the opportunity to cash in and ***avoid the risk of being eliminated on a later leg or the final event***."  '439 Patent at 2:48-53 (emphasis added); *see also id.* at 2:32-53 ("A ***unique differentiator of the product of the present disclosure*** may be

---

[1]  With the denial of cert in *American Axle & Manufacturing, Inc. v. Neapco Holdings, LLC*, *Alice* is, and will remain, the Supreme Court's final word on patent eligibility under 35 U.S.C. § 101 for the foreseeable future.

that … any desired number of players who remain eligible for a prize … or to win or have correct (win) predictions for each of the events or legs that are completed, may be offered a 'buy-out' or an opportunity to sell their tickets … and thereby provide the player the ***opportunity to cash in and avoid the risk of being eliminated on a later leg or the final event***.") (emphasis added)

Under step 2 of the § 101 analysis, the Court in *Alice* found that the claims, "which merely require generic computer implementation," fail to transform that abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 221. Like the claims in *Alice*, "[t]aking the claim elements separately, the function performed by the computer at each step of the process is 'purely conventional.'" *Id.* (quoting *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012)). Here, the claimed computerized steps of "initiating the multi-outcome wagering event," "receiving the wager," "identifying one or more winners," "initiating at least one of the buy-out offer and partial buy-out offer," "receiving an acceptance," "completing the remainder of the game," and "determining if any of the players have won" amount to nothing more than, respectively, initiating a game/program, receiving inputs or obtaining data, evaluating or monitoring data, providing a user prompt for user input, receiving a user input, and calculating results—which are among "the most basic functions of a computer." *Id.* at 225. These types of basic computer processing are "'well-understood, routine, conventional activit[ies]' previously known in the industry." *Id.* (quoting *Mayo*, 566 U.S. at 73). Nor does the use of "extravagant language" such as "cash out," "cash in," or "buy-out" offer to refer to the basic conventional function of risk hedging in the wagering context save the claims under § 101. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286-87 (Fed. Cir. 2013) ("Nor does requiring the supervisory institution to create and adjust a 'shadow credit record' and a 'shadow debit record' narrow the claims from the realm of abstraction. With the term 'shadow record,' the claim uses extravagant language to recite a basic function required of any financial intermediary in an escrow arrangement—tracking each party's obligations and performance."). With respect to the computer hardware recited in representative claim 1 of the '439 Patent, a "wagering input device" and a "system controller," the Supreme Court has already concluded that such hardware is "purely functional and generic." *Alice*, 573 U.S. at 226; *see also id.* ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). Just as the Supreme Court found in *Alice*, "none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment.'" *Id.* (quoting *CLS Bank Int'l*, 717 F.3d at 1290 (Lourie, J., concurring)). That is also the case for the Asserted Claims at issue here.

**(2) How do you reconcile the fact that to avoid being an abstract idea, a claim must not be to a "disembodied concept" and instead must be to a concept tethered to "real-world application[,]"** *see CLS Bank Int'l v. Alice Corp. Pty. Ltd.***, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (Lourie, J., concurring) (internal quotation marks and citations omitted), but on the other hand, just because a claim might include a large number of concrete, tangible components, that does not necessarily mean that the claim is not abstract,** *see Yu v. Apple, Inc.***, 1 F.4th 1040, 1042-45 & n.2 (Fed. Cir. 2021);** *see also In re TLI Commc'ns LLC Pat. Litig.***, 823 F.3d 607, 611 (Fed. Cir. 2016)? In other words, what is your view about what it means for a claim to have a sufficient "real-world application" in the Section 101 context?**

The key to determining where a claim falls on the spectrum from a "disembodied concept" to a "real-world application," particularly when the claim includes a large number of concrete, tangible components, is to "***look past drafting formalities and let the true substance of the claim guide [the] analysis***" under § 101. *CLS Bank Int'l*, 717 F.3d at 1288 (emphasis added); *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021) ("But '[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims.'") (quoting *ChargePoint, Inc. v. Sema-Connect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)). The "requirement for substantive claim limitations beyond the mere recitation of a disembodied fundamental concept," *i.e.*, beyond the mere recitation of the abstract idea itself, "has 'sometimes' been referred to as an 'inventive concept.'" *CLS Bank Int'l*, 717 F.3d at 1282; *see also Yu*, 1 F.4th at 1045 ("In other words, '[t]he main problem that [Yu] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept.'") (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1338 (Fed. Cir. 2017)). In this regard, different from the requirements of novelty or nonobviousness, an "'inventive concept' in the § 101 context refers to a genuine human contribution to the claimed subject matter." *CLS Bank Int'l*, 717 F.3d at 1283. Under § 101, this additional contribution of genuine human ingenuity "must represent more than a trivial appendix to the underlying abstract idea," which is not the case for all concrete, tangible components recited in a claim. *Id.*; *see also id.* ("Limitations that represent a human contribution but are merely tangential, routine, well-understood, or conventional, or in practice fail to narrow the claim relative to the fundamental principle therein, cannot confer patent eligibility.").

Courts have applied these principles to find that many concrete, tangible components are insufficient to provide an inventive concept beyond the abstract idea itself. For example, steps that may appear on the surface to be concrete human contributions have failed to supply an inventive concept because, "as a practical matter, they were necessary to every practical use of what [the court] found to be a natural law and therefore were not truly limiting." *CLS Bank Int'l*, 717 F.3d at 1283. Generic limitations that are, in a practical sense, necessary to every application of the abstract idea amount to "bare field-of-use limitations" that "cannot rescue a claim from patent ineligibility," particularly where they are vague and "cast in 'highly general language.'" *Id.* at 1283-84; *see also Yu*, 1 F.4th at 1043 ("What is claimed is simply a generic environment in which to carry out the abstract idea.") (citing *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d at 611 ("While claim 17 requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner."). In searching for an inventive concept in computer-implemented claims and other claims that recite concrete tangible components, courts often treat "generic" or "conventional" components that are recited as performing only their "basic" or "generic" functionality as being "insignificant postsolution," "pre-solution," or "ancillary" activity that "does not meaningfully limit the claim scope for purposes of patent eligibility." *CLS Bank Int'l*, 717 F.3d at 1286-87; *see also id.* at 1286 ("[A]ppending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit the claim scope for purposes of patent eligibility"); *Yu*, 1 F.4th at 1043 ("Only conventional camera components are recited to effectuate the resulting 'enhanced' image

… And, as claimed, these conventional components perform only their basic functions … and are set forth at a high degree of generality."); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d at 614 ("'For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'").

**(3)   When a court is figuring out what a claim is "directed to," what are the permissible tools that the court can use as part of that analysis?**

*Alice* step one presents a legal question that can be answered based on the intrinsic evidence. *See CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372 (Fed. Cir. 2020), *cert. denied sub nom. InfoBionic, Inc. v. CardioNet, LLC*, 141 S. Ct. 1266 (2021). The permissible tools that the Court may rely on in determining what a claim is "directed to" at step one of the *Mayo/Alice* two-part test include the claim language and the specification. Chief among these is the language of the asserted claims themselves. *See ChargePoint*, 920 F.3d at 769 ("Ultimately, '[t]he § 101 inquiry **must focus** on the language of the Asserted Claims themselves[.]'"). The Federal Circuit has "approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art," and, in doing so, the "focus" should be "on the language of the asserted claims themselves, considered in light of the specification." *Yu*, 1 F.4th at 1043. Importantly, while the specification may be helpful in illuminating the focus of a claim, "when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint*, 920 F.3d at 766; *see also id.* at 769 (recognizing that "the specification cannot be used to import details from the specification if those details are not claimed"). In some cases, it may also be appropriate for the Court to rely on the prosecution history of the challenged patent or the complaint. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (finding articles in prosecution history relevant to de novo review where patentee relied on it in opposition to motion under Fed. R. Civ. P. 12(c)); *Interactive Wearables, LLC v. Polar Electro Oy*, 501 F. Supp. 3d 162, 176 (E.D.N.Y. 2020) (finding that allegations in a complaint reinforced the notion that the claims exist in the realm of the abstract), *aff'd*, No. 2021-1491, 2021 WL 4783803 (Fed. Cir. Oct. 14, 2021). Additionally, "[i]t is within the trial court's discretion whether to take judicial notice of a longstanding practice where there is no evidence of such practice in the intrinsic record." *CardioNet*, 955 F.3d at 1373. The step one analysis, however, "does not require a review of the prior art or facts outside of the intrinsic record regarding the state of the art at the time of the invention." *Id.* at 1374.

In considering the claim language and the specification, courts have found certain inquiries to be instructive. A primary consideration is "whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). Courts have also considered whether the challenged claim has "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Comparing "claims at issue to those claims already found to be directed to an abstract idea in previous cases" is useful in determining what constitutes an abstract idea sufficient to satisfy the first step of the *Mayo/Alice* inquiry. *Enfish*, 822 F.3d at 1334. Additionally, "[t]he 'directed to' inquiry may also involve looking to the specification to

understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint*, 920 F.3d at 767-68 (considering whether the specification suggested that claim elements are "improved from a technical perspective" or "that the invention involved overcoming some sort of technical difficulty").

**(4) How is the "conventionality" analysis in Section 101 law different from that in a Section 102/103 analysis?**

In the § 101 context, "the Supreme Court used the language 'routine' and 'conventional' in *Mayo* to indicate what qualities added to a [judicial exception] do not create patent-eligible subject matter," while §§ 102/103 "consider whether particular steps or physical components together constitute a new or nonobvious invention." *CLS Bank Int'l*, 717 F.3d at 1284. The "conventionality" analysis in § 101 law differs from that in a §§ 102/103 analysis in that it requires something more than that a claim element or combination of claim elements was known in the art. Viewed on a spectrum, at one end is the disclosure required to anticipate a claim. Under 35 U.S.C. § 102(a)(1), for example, a claim is anticipated, and therefore invalid, if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." Disclosure of the claimed invention in a single prior art reference is sufficient for anticipation. *See King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010) ("Under 35 U.S.C. § 102, a claim is anticipated 'if each and every limitation is found either expressly or inherently in a single prior art reference.'"). Moving along the spectrum, the Federal Circuit has instructed that "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

Thus, analyzing patent eligibility "considers whether steps combined with a natural law or abstract idea are so insignificant, conventional, or routine as to yield a claim that effectively covers the natural law or abstract idea itself." *CLS Bank Int'l*, 717 F.3d at 1284. Importantly, while the "conventionality" analysis in § 101 requires more than mere disclosure in a single prior art reference, the inquiry is not whether the claim "as a whole is unconventional," but whether the claim contains an "inventive concept" sufficient to ensure that it amounts to significantly more than a patent on the abstract idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). A claim does not recite more than well-understood, routine, conventional activity previously known to the industry where it is "recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea[.]" *Yu*, 1 F.4th at 1045. The use of "already available computers, with their already available basic functions" as "tools in executing the claimed process" does not amount to unconventional activity. *SAP Am.*, 898 F.3d at 1169-70.

The Honorable Christopher J. Burke
July 1, 2022
Page 6

                Respectfully,

                */s/ Rodger D. Smith II*

                Rodger D. Smith II (#3778)

RDS/rah

cc:    All Counsel of Record (via electronic mail)