IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIOGENES LIMITED and <br> COLOSSUS (IOM) LIMITED,, <br><br> Plaintiffs, <br><br> v. <br><br> DRAFTKINGS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 21-1695 (MN) (CJB) <br> ) <br> ) <br> ) <br> ) |

**<u>MEMORANDUM OPINION</u>**

Brian A. Biggs, Stephanie E. O'Byrne, DLA PIPER LLP (US), Wilmington, DE; Michael L. Burns, Steven M. Kellner, Gregory Ferroni, DLA PIPER LLP (US), Philadelphia, PA – Attorneys for Plaintiff

Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; G. Hopkins Guy, III, BAKER BOTTS L.L.P., Palo Alto, CA; Jamie R. Lynn, Samuel L. Kassa, BAKER BOTTS L.L.P., Washington, DC; Robert L. Maier, Joshua M. Friedman, BAKER BOTTS L.L.P., New York, NY; Clarke Stavinoha, BAKER BOTTS L.L.P., Dallas, TX – attorneys for Defendant

August 26, 2022
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections of Plaintiffs Diogenes Limited and Colossus (IOM) Limited (collectively, "Plaintiffs" or "Colossus") (D.I. 48) and of Defendant, DraftKings, Inc. ("Defendant" or "DraftKings") (D.I. 47) to Magistrate Judge Burke's July 18, 2022 Report and Recommendation (D.I. 46) ("the Report"). The Report recommended granting-in-part and denying-in-part Defendant's motion to dismiss (D.I. 16) Plaintiff's amended complaint (D.I. 14). Defendant's motion argued that United States Patent Nos. 8,721,439 ("the '439 patent"), 9,117,341, 9,275,516, 9,424,716, 9,704,338, 10,970,969, 10,997,822, and 11,200,779 ("the '779 patent") are directed to non-patent-eligible subject matter. The Court has reviewed the Report (D.I. 46),[1] Plaintiffs' objections (D.I. 48) and Defendant's response (D.I. 54), and Defendant's objections (D.I. 47) and Plaintiffs' response (D.I. 53), and has considered *de novo* the objected-to portions of the Report, the relevant portions of the motion to dismiss and supporting documentation as well as the responses and replies thereto. (D.I. 16, 17, 20, 27). The Court has also afforded reasoned consideration to any unobjected-to portions of the Report. *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). For the reasons set forth below, both Plaintiffs' and Defendant's objections are OVERRULED, the Report is ADOPTED and Defendant's motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.

**I.     BACKGROUND**

On December 1, 2021, Plaintiffs sued Defendant asserting infringement of seven United States Patents (the '439 patent as well as U.S. Patent Nos. 9,117,341, 9,275,516, 9,424,716, 9,704,338, 10,970,969 and 10,997,822). (D.I. 1). Defendant moved to dismiss asserting that all claims are directed to non-patent-eligible subject matter. (D.I. 9). Before that motion was fully

---

[1]     The Court has also reviewed the transcript of the argument before Judge Burke. (D.I. 45).

briefed, Plaintiffs filed an amended complaint, asserting the same seven patents and adding assertions of infringement of the '779 patent. (D.I. 14). All told, the eight asserted patents have 376 claims, 31 of which are specifically asserted in the amended complaint. On February 22, 2022, Defendant filed the instant motion, asserting that all claims of the eight asserted patents fail the § 101 test. (D.I. 16).

Defendant's motion was referred to Magistrate Judge Burke to resolve. After hearing argument on July 8, 2022, Judge Burke stated his recommendation on the record (D.I. 45 ("Tr.")) and later incorporated his oral ruling into the Report (D.I. 46). Specifically, the Report agreed with Defendant's that the five asserted claims of the '439 patent (claims 1, 20, 21, 22, and 26) are patent ineligible.[2] (D.I. 46 at 9). But the Report recommended denying Defendant's motion as to the claims of the other seven patents (without prejudice to renew later) because Defendant had not sufficiently demonstrated that claim 1 is representative of all of those other asserted claims. (*Id.*). Plaintiffs have now objected to the Report's recommendation as to the claims of the '439 patent and Defendant has objected to the Report's recommendation as to the claims of the remaining seven patents. The objections have been fully briefed. (D.I. 47, 48, 53, 54).

## II.     DISCUSSION

### A.     Defendant's Objections

Defendant asserts that its objection to the report is limited to the recommendation that representativeness had not been shown for the claims of the seven patents-in-suit other than the '439 patent. (D.I. 47 at 1). The entirety of Defendant's argument about representativeness in its opening brief is set forth below:

> All the Asserted Patents are directed to the abstract idea of hedging financial risk in connection with a wager. The specification describes a "betting product where players make selections in a

---

[2]     The '439 patent was the earliest of the asserted patents that issued.

2

number of different legs" for example picking winners in a "championship series" (e.g., the World Series).[ ] *See, e.g.*, '439 Patent at 1:52-54. The players "may be offered a 'buy-out' or an opportunity to sell their tickets" to any one of a game operator, a third party, or another person. *Id.* at 2:42-47.[ ] The specifications explain, for example, that "[a]fter some percentage, such as a majority, of [a] sporting event [has] occurred," the system "may be configured to identify the remaining potential winning ticket or tickets for the Jackpot Pool[,]" "determine the likelihood of each ticket winning the Jackpot Pool[,] . . . [and] on that basis make a determination as to the attributed value of the ticket based on its respective probability of winning the Jackpot Pool[,]" and make a "buy-out offer . . . for buying [a] ticket from a player . . . for an indicated value." *See, e.g., id.*, 11:62-12:18.

In essence, the Asserted Patents attempt to claim the abstract idea of hedging financial risk in connection with a wager, by "cashing out" a bet prior to the completion of the event on which the bet is based. Each asserted claim recites this same concept echoed by the Amended Complaint: "The Asserted Patents describe novel systems, methods, and devices that improve upon prior art in online sports wagering . . . [T]he specific inventive feature claimed in each of the Asserted Patents is the ability to present multiple players with a 'buy-out' option before the completion of the final wagered-upon event." D.I. 14 at ¶ 12; *see also id.* at ¶¶ 39, 51, 63, 75, 86, 99, 110, 122 (describing substantially similar claim features).

It is well-settled that the eligibility of multiple patent claims may be determined based on an analysis of a representative claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *Fast 101 Pty Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 387-88 (D. Del. 2020) (treating single claim as representative of claims of multiple asserted patents). Claim 1 of the '439 Patent is representative, as it recites the same central, abstract concept as the other claims at issue. Claim 1 of the '439 Patent recites: [Claim 1 quoted].

Claim 1 of the '439 patent is representative of all asserted claims because the claims are all "substantially similar and linked to the" abstract idea of hedging financial risk in connection with a wager. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

The other claims do not veer from this abstract concept. The minor differences between the claims do not impact the patent eligibility analysis, as they amount to nothing more than conventional steps that would be carried out by any casino or sports betting operator

> and do not change the focus of the claim to anything other than the abstract idea. For example, claim 68 of the '516 Patent recites "receiv[ing] a selection of the cash out option from any of the one or more players that desire to fully or partially end the wager[,]" and "issu[ing winnings] . . . to any one of the one or more players selecting the cash out option" ('516 Patent, Cl. 68); these limitations are all "abstract as an ancillary part of" the same abstract idea—i.e., hedging financial risk in the context of offering buy-out offers prior to the completion of a wagering event. *See CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 512–13 (E.D. Va. 2017). The Asserted Claims of the other patents track the claims of the '439 patent. For example, claim 68 of the '516 patent is similar to claim 1 of the '439 patent, except that it recites additional limitations of "displaying," "ticket generating," and "winnings issuing." These ancillary additional limitations do not change the conclusion that the claim, as a whole, is directed to the same abstract idea. The same is true for every other asserted independent claim, which merely offer minor, non-technical variations on the same core concept. *See* Exhibit A.
>
> Accordingly, each of these claims is directed to the same abstract idea, and the eligibility analysis is the same. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1276-77 (Fed. Cir. 2012); *see also Fast 101 Pty*, 424 F. Supp. at 388.

(D.I. 17 at 4-7). Notwithstanding the diversity of the claims in the asserted patents,[3] Defendant only mentioned ***one*** claim of ***one*** patent other than the '439 patent in arguing representativeness. Defendant also included, as Exhibit A, a two page small print colored chart containing the asserted independent claims. (D.I. 17, Exhibit A). No explanation was offered for the chart – presumably, it was up to the Court to figure out the argument on its own. In its reply brief, Defendant added argument and mentioned two other claims in passing:

> As previously explained, claim 1 of the '439 Patent is representative because (1) all of the Asserted Claims are substantially similar and directed to the same abstract idea of hedging financial risk in connection with a wager, and (2) the minor differences between the claims are immaterial and do not change the focus of the claims to anything other than the abstract idea. D.I. 17 at 5-7, [Exhibit] A

---

[3] For example, some claims are drawn to methods, some to systems and some to a wagering apparatus. Similarly, the limitations of the claims are varied.

4

> (illustrating differences among asserted independent claims are merely minor, non-technical variations on same core concept).[ ]
>
> The Federal Circuit has confirmed that courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claims," which Colossus has not. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Colossus's identification of three purportedly nonrepresentative claims actually supports the representativeness of claim 1. First, Colossus argues that claim 68 of the '516 Patent, which was specifically addressed in DraftKings' motion (D.I. 17 at 7), "covers an entire wagering apparatus"—unsuccessfully trying to bring the abstract idea into the physical realm—but fails to explain how this renders claim 68 meaningfully distinct from claim 1 for purposes of this analysis. The preambles of claim 68 of the '516 Patent and claim 1 of the '439 Patent are similar, the former reciting "placement of a wager on an event comprised of one or more legs" and the latter reciting a method for a "wagering event [that] comprises a defined number of legs." Second, Colossus's reliance on claim 104 of the '716 Patent is misplaced, as claim 104 of the '716 Patent is not asserted in the FAC. Finally, Colossus's allegation that claim 16 of the '779 Patent captures "real time buy out offers" merely confirms that claim 16 is substantially similar and linked to the same abstract idea as representative claim 1 – hedging financial risk by making buy-out offers prior to the completion of a wagering event. Claim 1 of the '439 Patent thus should be treated as representative.

(D.I. 27 at 1-2).

Judge Burke's reaction to Defendant's request to find all of the claims ineligible was as follows:

> I will note that I [have] been reviewing Section 101 motions like these for most of my entire 11 years as a judge[;] during that time, I have resolved many, many such motions. But I cannot recall ever having seen an attempt by a defendant to assert representativeness across such a broad array of claims and broad array of patents in one set of briefing as in this effort by Defendant here.
>
> The [D]efendant's motion would implicate 27 other asserted claims across the seven other patents[—]patents that together include a total of 376 claims. And in its briefing, Defendant specifically addressed only a very small number of asserted claims, none with any great specificity. Although Defendant asserts that any

5

> differen[ce] between claim 1 and those various claims are "minor" and "immaterial," it [has] given the Court almost no argument or way to meaningfully analyze whether those statements are truly correct.
>
> Defendant attached as Exhibit A to its opening brief a chart that purported to show how certain[—]though nowhere near all[—]of those asserted claims bore some relation to claim 1. But that chart was incredibly hard to read, and it used a color-coded key that was very difficult to decipher. What was plain was that Defendant was straining to cram in argument about a huge smorgasbord of claims that could not responsibly be argued in just one motion like this.
>
> It is true that in *Berkheimer [vs.] HP Inc.*, the Federal Circuit noted that [c]ourts may treat a claim like claim 1 as representative of other claims in certain situations, such as if the "patentee does not present any meaningful argument for the distinctive significance of any claim limitation[s] not found in the representative claim[.]" But here, in its answering brief, Plaintiffs did present meaningful argument that one could not use claim 1 as a cudgel to eliminate 27 other asserted claims across seven other patents in the absence of any real substantive argument in support. Plaintiffs noted, for example, that some of those other claims include limitations that claim 1 does not . . . such as "real time buy-out offers" or that controllers "continuously" retrieve or evaluate data. Certain of the additional other asserted claims implicate certain combinations of hardware and software components that did [not] come up in our discussion of claim 1 today. The Court is not sure if these types of limitations would ultimately make a difference in the Section 101 analysis, but they might. And it believes it [is] fundamentally unfair to Plaintiffs to invalidate all of these claims without having a better process before doing so.

(D.I. 46 at 9-10 (footnotes omitted) (alteration in original)). Judge Burke's refusal to render ineligible all of the asserted claims based on Defendant's paltry effort at showing representativeness was spot on. Although the Federal Circuit has made clear that courts "may treat a claim as representative in certain situations,"[4] those situations do not extend to the one here – where Defendant offers arguments that are conclusory and unexplained at best and Plaintiff (as the

---

[4] *Berkheimer*, 881 F.3d at 1365.

6

Report correctly states (D.I. 46 at 10)) offered meaningful argument as to the distinctive differences between claims. As Defendant's objection to the Report's recommendation regarding representativeness has no merit, the objection is OVERRULED.

### B. Plaintiffs' Objections

Plaintiff objects to the Reports recommendation that the asserted claims of the '439 patent are directed to patent ineligible subject matter. For the reasons stated below, the Court overrules the objections.

### 1. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer*, 881 F.3d at 1368.

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*,

573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step."  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed to a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter).  In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature.  *Alice*, 573 U.S. at 217; *see also McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more."  *Alice*, 573 U.S. at 218; *see also McRo*, 837 F.3d at 1312.  This

8

second step is satisfied when the claim elements "involve more than performance of 'well understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish*, 822 F.3d at 1334.

### 2. Claim 1 of the '439 Patent

Plaintiffs assert that the Report erred in three ways: 1) it erred in finding claim 1 directed to the abstract idea of hedging financial risk at Step 1 of the *Alice* inquiry; 2) it ignored allegations in the amended complaint; and 3) it ignored case law cited in Plaintiffs' brief. The Court addresses the objections in turn.

#### a. Step 1 Objection

Plaintiffs argue that the Report erred in finding that claim 1 is directed to the abstract idea of "hedging financial risk." There is no dispute that "hedging financial risk" is an abstract idea,[5]

---

[5] *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010) (explaining that hedging financial risk is an "unpatentable abstract idea" and that to allow a patentee to "patent risk hedging would pre-

9

the issue, according to Plaintiffs, is that "hedging financial risk" is just one possible outcome and one that is not required by the claims.

Specifically, Plaintiffs argue that "hedging" a financial risk would "require a player to accept a buy-out offer" and thus, because the claims do not require acceptance, the claims are not directed to "hedging." (D.I. 48 at 3 ("Claim 1 of the '439 patent does not require a player to accept a buy-out offer. The claim cannot be 'directed to' hedging financial risk if hedging is not required by the claim.")). Notwithstanding Plaintiffs' certification that its objections "do not raise new legal or factual arguments," this appears to be an argument that was not made to Judge Burke. In any event, Plaintiffs offer no support (intrinsic or extrinsic) or other explanation for their narrow interpretation of hedging. But even if the Court were to accept that belated construction, Plaintiffs do not contest that the claim at least requires offering the ability to hedge (*i.e.*, offering a buy-out). And it is wholly unclear (and Plaintiffs do not argue) that offering a buy-out (*i.e.*, offering the ability to hedge) is less abstract than accepting a buy-out (*i.e.*, "hedging" as Plaintiffs define it).

Additionally, Plaintiffs argument that claim 1 as a whole is directed to "allowing a user to monitor a wager's status and make decisions accordingly" is unsupported by the claim language. Indeed, (as Defendants point out), Plaintiffs do not cite the language of claim 1 even once in their entire argument on this point. (D.I. 48 at 4 (citing the amended complaint and the specification)). Moreover, contrary to Plaintiffs' argument, claim 1 does not necessarily "allow[] a user to access, at any given time, whether their wager is or is not eligible to win a jackpot" or make such "information available to a user through the lifecycle of a wager." (D.I. 48 at 4).[6] Instead, as the

---

empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."

[6] During the oral argument, Judge Burke noted that claim 1 of the '439 "patent doesn't require this real-time offering of the buy-out offer" and Plaintiffs agreed ("[t]hat is certainly correct"). (D.I. 45 (Tr. at 139)).

Report found, claim 1 requires only that the system initiate the buy-out offer "at any time before the multi-outcome wagering event has been completed." (D.I. 46 at 5-6 (quoting the '439 Patent at 29:27-32)). There is nothing in the claims requiring that the user be able to access such information "at any given time" or "through the lifecycle of a wager."

Even if Plaintiffs' characterizations of the '439 Patent specification were accurate, "'[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that cover nothing more than the broad law or abstract idea underlying the claims.'" *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021). This is particularly true when, as here, "the mismatch between the specification statements . . . and the breadth of claim 1 underscores that the focus of the claimed advance is the abstract idea and not [a] particular configuration discussed in the specification that allegedly departs from the prior art." *Yu*, 1 F.4th at 1045. Claim 1 recites providing a buy-out offer to a user, and the intrinsic evidence supports the Report's finding that the claim is "directed to" a buy-out offer.

Having overruled all of Plaintiffs' objections as to step 1, the Court agrees with the analysis in the Report and the conclusion that claim 1 is directed to the abstract idea of hedging financial risk.

    b. <u>**Allegations in the Amended Complaint Objection**</u>

Plaintiffs argue that the Report ignored the allegations in the amended complaint that "technological improvements described and claimed in, for example, claims 1, 20, 21, and 22 of the '439 patent were neither conventional nor generic at the time of their invention, but rather required novel and non-obvious solutions to problems and shortcomings specific to the technical field of online gaming systems, operating on computer networks." (D.I. 48 at 7 (citing D.I. 14

(Amended Complaint), ¶¶ 44, 45)).[7] Rather than ignoring Plaintiffs' contentions, however, Judge Burke "carefully reviewed all submissions in connection with Defendant's motion," and rejected Plaintiffs' allegations and arguments. (*See* D.I. 46 at 1, 7-9).

In any event, in ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The Court need not, however, accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Allegations such as "the inventions of, for example, claims 1, 20, 21, and 22 of the '439 patent are more than just the performance of well-understood, routine or conventional activities known in the art; they do not claim an online gaming network operating in its routine manner," on which Plaintiffs rely, are little more than bald assertions without underlying factual support.

Moreover, as Defendant points out (D.I. 54 at 7), "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Yu*, 1 F.4th at 1046; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("ultimately, the 101 inquiry must focus on the language of the Asserted Claims themselves"). Here, the Report considered and rejected the allegations in Plaintiffs' amended complaint because, "none of these things . . . are claimed in

---

[7] In addition to the quoted language, Plaintiffs cite to paragraph 44 of the Amended Complaint, which alleges that "no existing electronic sportsbook was systematically offering the ability to dispose of a wager prior to conclusion of a wagering event for a determined value to all of its users" and paragraph 45, which alleges that "the inventions of, for example, claims 1, 20, 21, and 22 of the '439 patent are more than just the performance of well-understood, routine or conventional activities known in the art; they do not claim an online gaming network operating in its routine manner" and "[t]he prior art did not disclose the claimed, ordered combination of events discussed above, nor a device capable of performing such a method." (D.I. 44 at 7).

12

claim 1." (D.I. 46 at 7; *see also id.* at 8 ("[T]he claim does not in any way improve how computers function or [] override the routine or conventional ways that computers can be used[,] so as to provide an inventive concept sufficiently distinct from the abstract idea itself."). That is, Plaintiffs' argument that the Court ignored its allegations fails because the claim itself is missing an inventive concept. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

Accordingly, the self-serving "threadbare recitals of the elements of a cause of action, legal conclusion, and conclusory statements" that are contradicted by evidence in the record in Plaintiffs' Amended Complaint do not save their claims. *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012). And Plaintiffs' objections on this ground are overruled.

### c. Other Case Law Objection

Finally, Plaintiffs complain that the Report addressed *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) but did not specifically address two district court cases cited in Plaintiffs' brief.[8] (D.I. 48 at 8-10). The Report, however, addressed what Plaintiffs represented to be the most analogous opinion and found it unavailing.

As an initial matter, there is no reason for the Report to have discussed every case after addressing what Plaintiffs asserted was most relevant. As the Federal Circuit has made clear, "discussing in an opinion only the most relevant prior opinions, rather than every prior opinion in an actively-litigated field, is a necessary discipline if opinions are to be read, rather than just written." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016). In any event, Plaintiffs' arguments the claim 1 of the '439 patent "is as technologically-rooted as the

---

[8] The two cases are *Peloton Interactive, Inc. v. Echelon Fitness, LLC*, C.A. No. 19-1903-RGA, 2020 WL 3640064 (D. Del. July 6, 2020) and *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706 (D. Del. 2016), two district court denying a motion to dismiss and thus not subject to immediate Federal Circuit review.

13

claims in *Peloton* and *Treehouse*" (D.I. 48 at 10) are unavailing.  Plaintiffs' arguments consist of bald assertions and conclusions without any real analysis.  And Plaintiffs ignore the differences between claim 1 of the '439 patent and the claims at issue in *Peloton* and *Treehouse*, such as (as the Report noted) that there is a human analogue to claim 1 that was lacking in *Treehouse*. (*See, e.g.*, D.I. 46 at 6 ("The Court does not understand Plaintiffs to assert, nor could they, that humans are incapable of making a buy-out offer to a bettor in order to allow the bettor to hedge risk as part of a multi-leg bet."); *cf. Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 721 ("The human analogy is not representative of the claims as a whole.").

Having reviewed Plaintiffs' arguments and the cases at issue, Plaintiff's objections based on *Peloton* and *Treehouse* are overruled.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' objections to the Report and Defendant's objections to the Report are overruled.  The Report is adopted and Defendant's motion to dismiss is granted-in-part and denied-in-part.  An appropriate order will be issued.