IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DIOGENES LIMITED and )
COLOSSUS (IOM) LIMITED, )
                                             )
                    Plaintiffs,              )
                                             )   C.A. No. 21-1695-MN
          v.                                 )
                                             )
DRAFTKINGS, INC.,                            )
                                             )
                    Defendant.               )

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
DEFENDANT DRAFTKINGS, INC.'S COUNTERCLAIM AND TO STRIKE RELATED
<u>AFFIRMATIVE DEFENSE</u>**

<u>**OF COUNSEL:**</u>

Michael L. Burns (*Pro Hac Vice*)
Steven M. Kellner (*Pro Hac Vice*)
Gregory Ferroni (*Pro Hac Vice*)
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street,
Philadelphia, PA 19103
Telephone: (215) 656-3385
Facsimile: (215) 606-3385
michael.burns@us.dlapiper.com
steven.kellner@us.dlapiper.com
gregory.ferroni@us.dlapiper.com

**DLA PIPER LLP (US)**

/s/ *Stephanie E. O'Byrne*
Brian A. Biggs (DE Bar No. 5591)
Stephanie E. O'Byrne (DE Bar No. 4446)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
stephanie.obyrne@us.dlapiper.com

*Attorneys for Plaintiff Diogenes Limited and
Colossus (IOM) Limited*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..............................................................................................................1

II. BACKGROUND AND RELEVANT FACTS ................................................................2

    A.  Asserted Patent Prosecution History ..............................................................2

    B.  Procedural History ...........................................................................................4

III. LEGAL STANDARD .....................................................................................................4

IV. ARGUMENT ...................................................................................................................5

    A.  DK Still Does Not Meet Its Burden to Plead Materiality or Specific Intent
        Concerning the Alleged Betfair Reference ......................................................6

        1.  DK Has Not Shown That the Betfair System Is Material to the
              Asserted Patents .............................................................................9

        2.  DK's "Information and Belief" Allegations Do Not Meet Its Requirement to
              Plead Specific Intent to Withhold the Betfair System ....................................10

        3.  DK's Betfair-Related Allegations Do Not Infect the '341 Patent and Later-
              Issued Asserted Patents .................................................................................13

            a.  Because DK Pled Betfair and Acres Are Equivalent, Betfair Is Cumulative
               of Acres, and Its Disclosure Was Not Required ..........................................13

            b.  Any Alleged Inequitable Conduct Does Not Extend to Asserted Patents
               Where Betfair Was Cited During Prosecution .............................................14

    B.  DK's Partial and Full Cash Out Inequitable Conduct Theory Still Fails ..................16

        1.  DK's Partial and Full Cash Out Theory Is an Untimely Claim Construction
              Argument .....................................................................................................17

        2.  DK's Claim Broadening Argument Legally and Factually Fails.......................18

    C.  DK's Inequitable Conduct Counterclaim and Affirmative Defense Should Be
        Dismissed and Stricken With Prejudice for Futility.................................................19

V.  CONCLUSION ................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amer Sports Winter & Outdoor Co. v. Nordica U.S.A. Corp.*,
  No. 10-1534, 2010 WL 2635785 (N.D. Ill. June 28, 2010)....................................................12

*Analog Devices, Inc. v. Xilinx, Inc.*,
  No. 19-2225, 2021 WL 466859 (D. Del. Feb. 9, 2021)........................................................7, 8

*Arctic Cat, Inc. v. Polaris Indus. Inc.*,
  No. 13-3579, 2014 WL 5325361 (D. Minn. Oct. 20, 2014) ..........................................7, 12, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................4

*Astrazeneca Pharm. LP v. Teva Pharm. USA, Inc.*,
  583 F.3d 766 (Fed. Cir. 2009).................................................................................................8

*Bayer Cropscience AG v. Dow Agrosciences*,
  No. 10-1045, 2012 WL 1253047 (D. Del. April 12, 2012) .....................................................8

*BlackBerry Ltd. v. Typo Prod. LLC*,
  No. 14-00023, 2014 WL 1867009 (N.D. Cal. May 8, 2014).....................................................8

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
  No. 11-54, 2012 WL 2365905 (D. Del. June 21, 2012) ........................................................19

*Cabin Foods, LLC v. Rich Prods. Corp.*,
  No. 11-318, 2012 WL 433115 (W.D. Tex. Feb. 8, 2012)...................................................8, 12

*In re Clement*,
  131 F.3d 1464 ......................................................................................................................18

*Drew Techs., Inc. v. Robert Bosch, L.L.C.*,
  No. 12-15622, 2014 WL 562458 (E.D. Mich. Feb. 13, 2014)................................................15

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
  417 F. Supp. 2d 580 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007) ..........................16

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009).................................................................................7, 12, 14, 17

*Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*,
  540 F. Supp. 2d 724 (E.D. Tex. 2008) ..................................................................................14

*Grayson v. Mayview State Hosp.*,
    293 F.3d 103 (3d Cir. 2002)................................................................................19

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996)............................................................................9

*Human Genome Scis., Inc. v. Genentech, Inc.*,
    No. 11-6519, 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011).................................7

*IBM Corp. v. Priceline Grp., Inc.*,
    No. 15-137, 2017 WL 1349175 (D. Del. Apr. 10, 2017)....................................7

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
    16-791, 2017 WL 2118314 (N.D. Cal. May 16, 2017).......................................20

*Invista N. Am. S.à.r.l. v. M&G USA Corp.*,
    No. 11-1007, 2013 WL 12304544 (D. Del. May 3, 2013) ...............................8, 19

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
    863 F.2d 867 (Fed. Cir. 1988)............................................................................16

*Livery Coach Sols., LLC v. Music Express/East, Inc.*,
    245 F. Supp. 3d 639 (D. Del. 2017)....................................................................19

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed Cir. 1995)..........................................................................8, 16

*Pharmacia Corp. v. Par Pharm., Inc.*,
    417 F.3d 1369 (Fed. Cir. 2005)........................................................14, 15, 16, 17

*Philips N. Am. LLC v. Garmin Int'l, Inc.*,
    No. 19-6301, 2020 WL 6064006 (C.D. Cal. 2020) ............................................20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)................................................................................5

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009)..........................................................................13

*Senju Pharm. Co., Ltd. v. Apotex, Inc.*,
    921 F. Supp. 2d 297 (D. Del. 2013)....................................................................5

*Softview LLC v. Apple Inc.*,
    No. 10-389, 2011 WL 4571793 (D. Del. Sept. 30, 2011)...................................20

*St. Jude Med. v. Volcano Corp.*,
    No. 12-441, 2014 WL 2622240 (D. Del. Jun. 11, 2014) ........................6, 8, 13, 17

iii

*Telebrands Corp. v. IbyOne Prods. Inc.*,
    No. 17-997, 2018 WL 3696558 (D. Del. Aug. 3, 2018) .........................................................7, 9

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ...........................................................................................7, 12

*Theta IP, LLC. v. Samsung Elecs. Co., Ltd.*,
    No. 20-00160, 2021 WL 2322936 (W.D. Tex. June 7, 2021) ................................................18

**Other Authorities**

Fed. R. Civ. P. 12(a)(4)(A) ...................................................................................................................4

Fed. R. Civ. P. 55(a) ............................................................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................4, 19

Fed. R. Civ. P. 9(b) ........................................................................1, 5, 7, 10, 12, 15, 17

Fed. R. Civ. P. 12(f) .............................................................................................................................5

EAST\200846330.4

## I.     INTRODUCTION

Nearly four months past its deadline to file an answer, and without seeking leave from—or even consulting with—Plaintiffs Diogenes Limited and Colossus (IOM) Limited (collectively, "Colossus"), Defendant DraftKings, Inc. ("DK") filed an Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint for Patent Infringement (the "Initial Answer").[1]  D.I. 65. Notwithstanding its inexplicable delay, DK inadequately pled its Fifteenth Affirmative Defense (Unenforceability Due to Inequitable Conduct), *id.* at 26-28, and Colossus moved to strike it. D.I. 66.  In response, DK now repleads by adding nearly sixty pages of puffery—including a counterclaim—concerning the same inequitable conduct theories it previously raised.  D.I. 70.

Despite all this filler, as with its Initial Answer, DK does not plead inequitable conduct with the required particularity under Rule 9(b).  DK bases its allegation on two acts: (1) an alleged failure to disclose a purported prior art reference, the Betfair system, to the U.S. Patent and Trademark Office ("PTO"); and (2) a hypothetical violation, should Colossus offer positions in this litigation that purportedly contradict statements made to the PTO during prosecution.  DK pleads neither the Betfair system's materiality—which is particularly troubling considering later disclosures of that system to the PTO—nor any specific intent to withhold that alleged prior art from the PTO.  Moreover, its second basis is a vague hypothetical that lacks requisite particularity.  In sum, DK has not pled an inequitable conduct counterclaim or defense, and they should be dismissed and stricken, respectively and with prejudice.

---

[1] DK's belated filing alone likely warrants dismissing its Initial and First Amended Answers entirely.  *See* Fed. R. Civ. P. 55(a).  To avoid additional motions practice, Colossus has and does not move to strike DK's pleadings in their entirety on this ground.

## II.   BACKGROUND AND RELEVANT FACTS

### A.   Asserted Patent Prosecution History

Colossus alleges infringement of seven patents relating to particular improvements in online gaming and sports wagering; listed in chronological order:  U.S. Patent Nos. 9,117,341 (the "'341 patent"); 9,275,516 (the "'516 patent"); 9,424,716 (the "'716 patent"); 9,704,338 (the "'338 patent"); 10,970,969 (the "'969 patent"); 10,997,822 (the "'822 patent"); and 11,200,779 (the "'779 patent") (collectively, the "Asserted Patents").  D.I. 1; D.I. 14.  The Asserted Patents are part of the same family and are continuations or continuations-in-part of each other.  *See* D.I. 14-2 at 2; D.I. 14-3 at 2; D.I. 14-4 at 2; D.I. 14-5 at 2-3; D.I. 14-6 at 2-3; D.I. 14-7 at 2-3; D.I. 14-8 at 2-3.  The family contains two earlier, unasserted patents, also listed in chronological order as follows:  U.S. Patent Nos. 8,602,884 (the "'884 patent") and 8,721,439 (the "'439 patent").[2]  *See* D.I. 70 ¶¶ 285, 288; *see also* D.I. 70-2 at 1-152.  The '884 patent stems from U.S. Patent Application No. 13/605,813 (the "'813 application"), filed on September 6, 2012.  *See* D.I. 70 ¶ 276; *see also* D.I. 70-2 at 110.

DK's inequitable conduct allegations concern two prior art references cited during the Asserted Patents' prosecutions.  First, while prosecuting the '341 patent—the third patent in the family and the earliest Asserted Patent—the PTO rendered an anticipation rejection concerning the Acres reference, U.S. Patent Application No. 2001/136566 ("Acres").  *See* D.I. 70 ¶ 287; *see also* D.I. 70-2 at 153-80.  According to DK, "Acres discloses offering a player a full buy-out offer."  D.I. 70 ¶ 287; *see also* D.I. 70-2 at 176 ¶ [0071].  But applicant and his counsel overcame the Acres challenge and subsequently disclosed it during the remaining Asserted Patents' prosecutions.  *See* D.I. 14-2 at 3; D.I. 14-3 at 2; 14-4 at 3; D.I. 14-5 at 3; D.I. 14-6 at 3;

---

[2] Colossus initially alleged infringement of the '439 patent, but its claims have been dismissed. *See* D.I. 46 at 9; D.I. 55 at 15.

D.I. 14-7 at 3; D.I. 14-8 at 3.

Second, on January 15, 2016, while prosecuting Australian Patent Application No. 2013333573, the Australian patent office raised the Betfair betting exchange ("Betfair") as prior art in a Statement of Grounds and Particulars of Opposition ("Australian Statement"). *See* D.I. 66-2. The Australian Statement's Section 2.2 of the particulars discloses Betfair's "Cash Out" and a Betfair YouTube video link. *See id*. And according to DK, just like Acres, Betfair discloses offering "a 'full buy-out' before a wagering event was completed." D.I. 70 ¶ 286.

To overcome this challenge, counsel filed an inventor declaration (the "Australian Declaration"). *See* D.I. 67-1 Declaration of Bernard J. Marantelli, Australian Patent App. No. 2013333573). In the Declaration, the inventor advised that "no operator (besides Colossusbets) offered partial cash-out until March 2015, whereas Colossusbets went live in the summer of 2013 with its partial cash-out." *Id*. ¶ 32. He also stated that "[a]round 2001, [he] was introduced to betting exchanges, primarily . . . Betfair." *Id*. ¶ 2. The inventor also described and traversed an expert declaration with prior art; however, contrary to DK's assertion, the inventor did not state that he either had knowledge of or used any cited third-party betting exchanges' allegedly offered cash out functionalities before the September 6, 2012 priority date. *See, e.g.*, D.I. 70 ¶ 281 (alleging inventor's use of the prior art by citing the inventor's declaration traversing that prior art).

On January 21, 2016, less than one week after the Australian Statement, counsel filed two information disclosure statements ("IDS") for all then-pending Asserted Patents' applications, which later issued as the '516 and '716 patents, citing the Australian Statement. *See* D.I. 66-3 (IDS for '516 patent application); D.I. 66-4 (IDS for '716 patent application). Moving forward, the Betfair YouTube video and Australian Patent Application No. 2013333573 were cited and

appeared in the References Cited section for every subsequent Asserted Patent.  *See* D.I. 14-5 at 3, D.I. 14-6 at 3, D.I. 14-7 at 3, D.I. 14-8 at 3.

### B.      Procedural History

On February 7, 2022, Colossus filed the operative First Amended Complaint ("FAC") against DK, alleging infringement of the '439, '341, '516, '716, '338, '969, '822, and '779 patents.  *See* D.I. 14.  DK moved to dismiss the FAC.  *See* D.I. 16.  The Court dismissed the '439 patent, and Colossus's claims for all other patents remain.  *See* D.I. 46, D.I. 56.

Following the Court's August 26, 2022 adoption of the Magistrate Judge's Report and Recommendation dismissing the '439 patent, DK had until September 9, 2022 to answer the FAC.  *See* Fed. R. Civ. P. 12(a)(4)(A).  On December 27, 2022, nearly four months late and without seeking leave, DK filed its Initial Answer, which contained fifteen Affirmative Defenses.  *See* D.I. 65 at 23-28.  On January 17, 2023, Colossus moved to strike DK's Fifteenth Affirmative Defense (Unenforceability Due to Inequitable Conduct).  *See* D.I. 66.  In response, on February 7, 2023, DK filed a First Amended Answer and responded to Colossus's motion to strike.  *See* D.I. 70, D.I. 71.  DK's First Amended Answer contains the same fifteen affirmative defenses as its Initial Answer.  *See* D.I. 70 ¶¶ 272-307.  It also added fifteen Counterclaims, including Count I for a declaratory judgment of unenforceability due to inequitable conduct.  *See id.* ¶¶ 319-581.  Colossus now moves to dismiss Counterclaim Count I and strike DK's Fifteenth Affirmative Defense, which both raise inequitable conduct.

## III.     <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a cause of action where the facts alleged fail to state a claim that is "plausible on its face" or that is barred as a matter of law.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

4

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

DK's counterclaim alleging patent unenforceability premised upon inequitable conduct is an allegation sounding in fraud. *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013). Rule 9 adds a heightened pleading standard for allegations of fraud—such as inequitable conduct—requiring that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a pleading provide both a "theoretically viable claim" and the factual allegations that make it plausible. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Relatedly, pursuant to Rule 12(f), the Court "may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). "Just as a [counter]claim for inequitable conduct must meet the heightened pleading requirements of Rule 9(b), a defendant is also required to plead this affirmative defense with particularity under Rule 9(b)." *Senju*, 921 F. Supp. 2d at 306 (internal quotation marks and citation omitted). And when ruling on a motion to dismiss or strike, a court must construe all facts in favor of the nonmoving party. *See id.* at 301.

## IV.  ARGUMENT

Even after amendment, DK's inequitable conduct allegations still concern two instances of alleged inequitable conduct: (1) an initial, purported withholding of the Betfair reference while prosecuting the '884 and '341 patents, *see* D.I. 70 at ¶¶ 272-91, 304-05, 307, 319-424, 581; and (2) an alleged claim-broadening concerning apparently claimed partial and full cash out functionalities for the '516, '716, '338, '969, '822, and '779 patents (the "later-issued Asserted Patents"), *see id.* ¶¶ 272-74, 276-77, 292-307, 319-49, 425-581. As in its Initial Answer, these theories still fail.

First, despite DK's efforts to pad its pleading, its threadbare Betfair allegations still lack the required particularity. DK has not pled specific facts that might show but-for materiality and

specific intent to deceive the PTO.  Additionally, in a failed attempt to plead prior knowledge, DK infers specific intent through twisting, and using out of context, inventor statements in the Australian Declaration.

Relatedly, even if the Court believes that DK has pled inequitable conduct concerning the unasserted '884 patent, that pleading does not extend to the Asserted Patents.  DK's materiality argument—that Betfair and Acres are equivalent—means Betfair is cumulative of Acres, which was cited for all Asserted Patents.  *See, e.g.*, D.I. 70 ¶ 287 ("Acres discloses . . . a full buy-out offer."); *see also id.* ¶¶ 295, 302, 387, 390, 416. Also, DK does not plead how any Betfair-related inequitable conduct occurred while prosecuting the later-issued Asserted Patents that *disclosed* Betfair.

Second, DK's argument that Colossus somehow committed inequitable conduct *during prosecution* if it submits a partial and full cash out claim construction *in this litigation* simply is not a viable theory; notwithstanding, this argument also lacks particularity.

And finally, given DK's repeated failure to plead these theories, amendment would be futile.  Therefore, Colossus requests the Court dismiss the inequitable conduct Counterclaim (Count I) and strike the Fifteenth Affirmative Defense with prejudice.

### A.      DK Still Does Not Meet Its Burden to Plead Materiality or Specific Intent Concerning the Alleged Betfair Reference

To demonstrate inequitable conduct, the accused infringer bears the burden to prove that "a specific individual with a duty of candor to the PTO 'misrepresented or omitted material information with the specific intent to deceive the PTO.'"  *St. Jude Med. v. Volcano Corp.*, No. 12-441, 2014 WL 2622240, at *1 (D. Del. Jun. 11, 2014) (quoting *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011)).  The Federal Circuit has long acknowledged that alleging inequitable conduct "on the slenderest grounds" has become an

"absolute plague." *Therasense*, 649 F.3d at 1289 (quoting *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)).  Thus, courts strictly police defenses of inequitable conduct and fraud on the PTO to ensure that they are "pleaded in detail" and set forth "particularized factual bases for the allegation[s]." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).  Eliminating deficient inequitable conduct and fraud defenses at the outset of a case is important particularly to avoid the needless waste of resources on what courts have termed the "atomic bomb" of patent litigation.  *See Therasense*, 649 F.3d at 1288.

The Federal Circuit has held "the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291.  To adequately allege but-for materiality, an inequitable conduct fraud pleading, at a minimum, must identify (1) the specific claims and claim limitations at issue, (2) where in the allegedly omitted reference the material information appears, and (3) how a reasonable examiner would use the reference in determining patentability. *See Telebrands Corp. v. IbyOne Prods. Inc.*, No. 17-997, 2018 WL 3696558, at *2-3 (D. Del. Aug. 3, 2018); *Exergen*, 575 F.3d at 1327.  General allegations about an examiner not granting the patent if the reference had been disclosed are insufficient; the pleading must contain specific facts establishing but-for materiality.  *See IBM Corp. v. Priceline Grp., Inc.*, No. 15-137, 2017 WL 1349175, at *11 (D. Del. Apr. 10, 2017), *report and recommendation adopted,* 2017 WL 11549735 (D. Del. May 10, 2017); *see also Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-2225, 2021 WL 466859, at *3 (D. Del. Feb. 9, 2021); *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-6519, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011).  "[A] pleading fails to satisfy the requirements of Rule 9 where it fails to identify . . . 'which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found.'" *Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-3579, 2014 WL 5325361,

at *24 (D. Minn. Oct. 20, 2014) (quoting *Exergen*, 575 F.3d at 1327); *see also Cabin Foods, LLC v. Rich Prods. Corp.*, No. 11-318, 2012 WL 433115, at *2-*8 (W.D. Tex. Feb. 8, 2012).

In addition to but-for materiality, an inequitable conduct defense must allege specific intent to deceive.  "A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the [pleading] recites facts from which the court may reasonably infer that a specific individual . . . withheld [invalidating] information with a specific intent to deceive the PTO."  *St. Jude*, 2014 WL 2622240, at *1 (quoting *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011)).  "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference."  *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed Cir. 1995) (emphasis added).

"A conclusory allegation of specific intent is insufficient."  *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-00023, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014) (rejecting allegation that failure to disclose prior art "was done with the specific intent to deceive the PTO" where plaintiff did "not plead[ ] any facts from which [the court] can reasonably make this inference.").  Allegations of materiality, knowledge of material information, and the non-disclosure of that information are insufficient.  *See Invista N. Am. S.à.r.l. v. M&G USA Corp.*, No. 11-1007, 2013 WL 12304544, at *11 (D. Del. May 3, 2013); *Bayer Cropscience AG v. Dow Agrosciences*, No. 10-1045, 2012 WL 1253047, at *4 (D. Del. April 12, 2012).  And importantly, allegations that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO . . . fail to provide facts from which the court can reasonably infer specific intent."  *Analog Devices*, 2021 WL 466859, at *3; *see also Astrazeneca Pharm. LP v. Teva Pharm. USA, Inc.*, 583 F.3d 766, 770 (Fed. Cir. 2009) ("Intent to deceive cannot be inferred from

8

a high degree of materiality alone, but must be separately proved to establish unenforceability due to inequitable conduct."); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.").

### 1. DK Has Not Shown That the Betfair System Is Material to the Asserted Patents

DK's pleading does not show the Betfair system is material to allowing any Asserted Patent. Essentially, DK argues that Betfair would have been material to patenting the '884 and '341 patents because the '341 patent received a challenge from the Acres reference, and both Betfair and Acres purportedly disclose "offering a player a full buy-out offer."[3] D.I. 70 ¶ 287; *see also id.* ¶¶ 274-76, 289, 291, 293-95, 299-302, 304, 379-82, 387, 390, 432-33, 436-37, 447, 449, 459-60, 462-63, 470, 472, 474, 485, 489-90, 496, 498, 514, 520-21, 527, 529-30, 542, 547-48, 554, 556-57, 565, 569-70, 577, 579-80.

But DK fails to explain exactly what Betfair discloses and how that reads on the Asserted Patents' claims. DK does not allege the Betfair system discloses any feature that, having been disclosed to the PTO, would have prevented the Asserted Patent's claims from being allowed. *See Telebrands*, 2018 WL 3696558, at *2-3. Instead, it settles for sweeping allegations that Betfair discloses "full cash out," which allegedly can be interchanged with Acres, without explaining either how that reads on the Asserted Patents' claims or why that feature differs from Acres. *See, e.g.*, D.I. 70 ¶¶ 279, 357 ("[T]he Betfair betting exchange allowed the public to perform a 'full cash out' of an active ticket before the conclusion of a wagering event."); *see also id.* ¶ 287 ("an examiner would have considered the Betfair betting exchange but-for material to

---

[3] Importantly, Colossus does not concede what Betfair or Acres disclose at this time. Rather, Colossus uses DK's contentions to highlight its logical shortcomings.

the patentability of at least claim 1 of the '884 [p]atent [because] . . . during examination of the application that became the '341 [p]atent, the USPTO rejected the original claims of the '341 [p]atent as anticipated by . . . Acres.").  This falls well short of the Rule 9(b) pleading obligation, which required DK to allege plausibly how claims in the many different Asserted Patents would have been rejected if Betfair was disclosed.  All told, it has not pled Betfair is but-for material to patenting the unasserted '884 patent or the Asserted Patents.

### 2. DK's "Information and Belief" Allegations Do Not Meet Its Requirement to Plead Specific Intent to Withhold the Betfair System

Regardless of whether DK pleads Betfair's but-for materiality, its inequitable conduct allegations independently fail because it also does not plead specific intent to withhold the alleged Betfair reference.  Contrary to the Rule 9(b) pleading standard, DK has not pled that the inventor or his counsel knew of Betfair's allegedly material "buy-out" or "cash out" functions, or that they made a deliberate decision to withhold that information.  Rather, DK twists, and uses out of context, the Australian Declaration in a failed attempt to plead prior knowledge.

DK bases its specific intent allegation on the Australian Declaration.  *See, e.g., id.* ¶ 278; D.I. 67-1 ¶ 32.  It cherry-picks two paragraphs and extrapolates that the inventor, prior to filing the '813 application, "used the Betfair betting exchange . . . to initiate and receive a 'full cash out' on a single bet before the conclusion of a wagering event."  D.I. 70 ¶ 281, *see also* D.I. 67-1 ¶¶ 2, 32.  But the inventor did not make this admission, and nothing in those paragraphs supports DK's leaps.

Rather, the inventor stated that "[a]round 2001, [he] was introduced to betting exchanges, primarily . . . Betfair."  D.I. 67-1 ¶ 2.  This statement does not demonstrate awareness of Betfair's alleged cash out functionalities at that time, or any time.  In fact, DK's newly-appended exhibits purporting to show when Betfair offered "cash out" functionality demonstrate that the

functionality was not available until February 2011.  *See* D.I. 70-1 at 30.  Regardless, these exhibits do not impute that knowledge *to the inventor or his counsel*, as DK must plead.  *See* D.I. 70 ¶¶ 279-280, 355-61.  Importantly, the inventor did not state in the declaration when he became aware that Betfair allegedly included cash out functionality.  D.I. 67-1 ¶¶ 2, 32.  Instead, the inventor traversed the prior art of record using their purported dates.  *See id.* ¶ 32 ("[t]he cash-out video from Betfair in 2012 does not invalidate the inventiveness of the present patent application.").  In addition, he stated that "no operator (besides Colossusbets) offered partial cash-out until March 2015, whereas Colossusbets went live in the summer of 2013 with its partial cash-out."  *Id.* ¶ 32.  These dates postdate the Asserted Patents' September 6, 2012 priority date.  At bottom, DK does not plausibly plead facts that fill any of these gaps or demonstrate knowledge of the allegedly material Betfair "cash out" or "buy-out" functionalities.

In any event, mere knowledge of the allegedly material matter is insufficient to plead the deliberate decision to withhold a known material reference required of an inequitable conduct defense.  To be clear, DK's only support for its scienter argument is the Australian Declaration and patent applications.  DK exaggerates the Australian Declaration into, at most, an alleged admission that the inventor knew of the Betfair cash out feature before the priority date, and then extrapolates that into a litany of assumptive "information and belief" allegations that the inventor and his counsel *intentionally withheld* information from the PTO.  *See, e.g.*, D.I. 70 ¶ 375.  Specifically, DK assumes that: (1) the inventor knew of and used Betfair's cash out feature before filing the '813 application and disclosed this information to his counsel, *see id.* ¶¶ 276, 281-82, 304, 320, 362-67; (2) the inventor and his counsel hid their full Betfair cash out knowledge from the PTO while prosecuting the '884 and '341 patents, with intent to later broaden those claims to include full cash out, *see id.* ¶¶ 284, 289, 371-78, 382-86, 399-401, 412,

414-416; and (3) they executed that plan by recapturing full cash out through broadening later-issued Asserted Patents' claims.  *See id.* ¶¶ 294, 296, 298, 301, 303, 434-35, 438, 440-42, 461, 464-65, 486-88, 491, 503, 515-19, 522, 534, 543-46, 549, 561, 567-68, 571-72.

As explained above, at best, DK alleges the inventor knew of Betfair but not its alleged cash out capability.  DK's knowledge allegations are a far cry from the specific intent it must plead for its inequitable conduct theories to survive.  *See Therasense*, 649 F.3d at 1290; *Cabin Foods, LLC*, 2012 WL 433115, at *5 ("Pleading intent on 'information and belief' can be acceptable under Rule 9(b) when another party has control of essential information; nevertheless, the pleading must still include "the specific facts upon which the belief is reasonably based." (quoting *Exergen*, 575 F.3d at 1330–31)).  DK has not pled any underlying facts that might show that the inventor either knew of Betfair's cash out function before September 6, 2012, or intentionally withheld this knowledge from the PTO with a *specific intent* to deceive.  *Exergen*, 575 F.3d at 1328–29.  Courts routinely deny similarly unsupported leaps.  *Exergen*, 575 F.3d at 1330–31 (finding deficient a pleading lacking specific factual allegations that an individual "decided to deliberately withhold [information] from the relevant examiner"); *Arctic Cat*, 2014 WL 5325361, at *25 (reasoning pleading knowledge of prior art, alleged failure to disclose it, and later disclosure is "insufficient to demonstrate deliberate withholding of information as required by the Federal Circuit's pleading standards.").  Simply put, DK's threadbare allegations of what it hopes to be true are insufficient.  *See Amer Sports Winter & Outdoor Co. v. Nordica U.S.A. Corp.*, No. 10-1534, 2010 WL 2635785, at *2 (N.D. Ill. June 28, 2010) (striking inequitable conduct allegation premised on what party hoped to find upon further investigation and discovery).

### 3. DK's Betfair-Related Allegations Do Not Infect the '341 Patent and Later-Issued Asserted Patents

Even assuming, *arguendo*, that DK has pled materiality and scienter for the unasserted '884 patent (it has not), DK has not pled these elements for the '341 patent and the later-issued Asserted Patents—the '516, '716, '338, '969, '822, and '779 patents.

#### a. Because DK Pled Betfair and Acres Are Equivalent, Betfair Is Cumulative of Acres, and Its Disclosure Was Not Required

Even if the Court concludes DK pled Betfair's materiality for the '884 patent, which discloses neither Betfair nor Acres, this argument fails for the '341 patent and all later-issued Asserted Patents that disclose Acres. *See* D.I. 14-2 at 3; D.I. 14-3 at 2; 14-4 at 3; D.I. 14-5 at 3; D.I. 14-6 at 3; D.I. 14-7 at 3; D.I. 14-8 at 3. As discussed above, *supra* Section IV.A.1, DK's materiality argument is that Betfair discloses exactly what Acres discloses: full cash out. *See, e.g.*, D.I. 70 ¶¶ 279, 287, 357. But this equivalence means Betfair is cumulative of Acres, and the inventor need not have disclosed Betfair once Acres was prior art of record. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009) ("An applicant has no duty to disclose a reference to the PTO if it is cumulative."); *St. Jude*, 2014 WL 2622240, at *1 ("[A defendant] must also show that the omitted information is not cumulative of the information already on the record." (citing *Exergen*, 575 F.3d at 1329-30)).

Furthermore, DK's unsupported conclusory assertions that "[t]he Betfair betting exchange is not cumulative of Acres" are insufficient to differentiate the references. D.I. 70 ¶¶ 398, 413, 439. DK's entire Betfair materiality argument rests on equating Betfair with Acres, so it cannot credibly plead that Betfair "is not cumulative" of Acres. Other than disclosing "full cash out," DK does not argue any other reason Betfair is material. *See, e.g.*, *id.* ¶ 286 ("[T]he Betfair betting exchange implemented a 'full buy-out' before a wagering event was completed."). For these reasons, any inequitable conduct based on Betfair does not affect the

13

Asserted Patents.

### b. Any Alleged Inequitable Conduct Does Not Extend to Asserted Patents Where Betfair Was Cited During Prosecution

In addition to disclosing Acres, the inventor also disclosed Betfair while prosecuting the later-issued Asserted Patents.[4] *See* D.I. 14-3 at 2; D.I. 14-4 at 2; D.I. 14-5 at 3; D.I. 14-6 at 3; D.I. 14-7 at 3; D.I. 14-8 at 3. Any inequitable conduct stemming from Betfair's nondisclosure cannot affect the later-issued Asserted Patents. *See Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 540 F. Supp. 2d 724, 733 (E.D. Tex. 2008) ("It is difficult to imagine how any inequitable conduct with respect to the . . . patent 'infected' the four later patents when those patents explicitly incorporated the publication by reference into their specifications. Any potential defect was cured by this inclusion."); *see also Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005) (holding "this court's inequitable conduct cases do not extend inequitable conduct in one patent to another patent that was not acquired through culpable conduct."); *Exergen*, 575 F.3d at 1331 ("The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent to support an allegation of inequitable conduct."); *Arctic Cat*, 2014 WL 5325361, at *23-*25 (dismissing inequitable conduct argument where exhibits attached to the complaint showed allegedly withheld reference was submitted in two related applications and the claims were allowed in those applications).[5]

The timing of Betfair's disclosure in the Australian patent action and subsequent disclosures in the PTO suggest a prompt and earnest disclosure—not intentional withholding.

---

[4] Colossus does not ask that the Court engage in a fact-finding expedition in deciding its Motion; the Court may take judicial notice of Betfair's disclosure on the face of these patents, rendering DK's pleading insufficient on its face.

[5] As explained in Section IV.A.3.a, this also applies to the '341 patent where the PTO considered Acres, and not Betfair, since DK pled that Acres is equivalent to Betfair.

14

Less than *one week* from Betfair's first citation, inventor disclosed the reference during all then-pending U.S. applications. *See* D.I. 66-3; D.I. 66-4.  DK did not articulate any plausible facts that might suggest any nefarious intent, let alone that might meet the Rule 9(b) heightened pleading standard.

Additionally, DK's bereft allegations regarding the later-issued Asserted Patents do not pass muster.  *See* D.I. 70 ¶¶ 292-303, 425-580.  DK realleges the same conclusory statement—that "[a]n examiner would have considered the Betfair betting exchange but-for material to . . . patentability"—for each subsequent patent, ignoring that Betfair was *disclosed* during prosecution.  *Id.* ¶¶ 295, 302; *see also id.* ¶¶ 436, 460, 462, 489, 520, 547, 569.  Concerning an intentional withholding, DK baselessly contends, only for the '516 patent, "Applicants intentionally hid their full knowledge of the Betfair betting exchange from the USPTO," without elaborating on *what* the inventor or his counsel allegedly withheld.[6]  *Id.* ¶ 440; *see also id.* ¶ 304. And for the other later-issued Asserted Patents, DK focuses only on vague subject matter recapturing accusations that (a) do not address what about Betfair was intentionally withheld from the PTO and (b) independently fail as a matter of law, *see infra* Section IV.B.  See D.I. 70 ¶¶ 461, 464-65, 486-88, 491, 515-19, 522, 543-46, 549, 567-68, 571-72.

Finally, DK cites to cases in its pleading and provides argument that the alleged inequitable conduct during the '884 and '341 patents' prosecutions infects all later-issued

---

[6] DK's use of broad pronouns like "applicants" undermines its argument.  Courts routinely reject inequitable conduct arguments that cannot point to the specific person allegedly acting.  *See, e.g.*, *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2014 WL 562458, at *3 (E.D. Mich. Feb. 13, 2014) ("By alleging that 'Michael Drew, Brian Herron and/or their representatives' committed a particular act, Bosch has not alleged that any one of those individuals necessarily committed the particular act, nor has Bosch clearly pleaded any joint concert of action.").  Moreover, DK's litany of persons allegedly responsible for the inequitable conduct they allege must be stricken as unsupported and overly broad.  *See* D.I. 70 ¶¶ 273, 323-349.

Asserted Patents, but these cases are distinguishable.[7]  *See id.* ¶¶ 277, 305-06, 402, 404, 417, 419, 443, 445, 466, 468, 492, 494, 523, 525, 550, 552, 573, 575.  Most of the cases either did not concern a later disclosure of the reference allegedly withheld or reasoned that a later disclosure *foreclosed* inequitable conduct allegations.  *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988) (reversing and remanding district court inequitable conduct finding concerning single patent); *Molins*, 48 F.3d at 1183 (finding no inequitable conduct for later-disclosed reference allegedly buried in PTO submission).  Additionally, the *eSpeed* decision set forth steps for curing the alleged misconduct, which the inventor here followed in disclosing Betfair while prosecuting the later-issued Asserted Patents.  *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 596 (D. Del. 2006) ("To cure earlier inequitable conduct, an applicant must (1) expressly advise the PTO of [the] existence [of the misrepresentation], stating specifically wherein it resides; (2) . . . , the PTO is to be advised what the actual facts are, the applicant making it clear that further examination in light thereof may be required; and (3) on the basis of the new and factually accurate record, the applicant must establish patentability of the claimed subject matter." (quotation marks and citation omitted)), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007).  In sum any alleged inequitable conduct concerning Betfair was cured through disclosing it while prosecuting the later-issued Asserted Patents.

**B.     DK's Partial and Full Cash Out Inequitable Conduct Theory Still Fails**

DK's second inequitable conduct theory concerns statements made to the PTO concerning the Asserted Patents' scope.  Here, DK accuses the inventor and his counsel of inequitable conduct for "recaptur[ing] the exact subject matter that Applicants argued was not covered by the claims of the '341 [p]atent—specifically, a 'buy out' offer alone."  D.I. 70 ¶ 423;

---

[7] DK's lack of factual bases for its claims is telling considering its repeated citations to case law in its Amended Answer, seemingly anticipating impending motion practice.

*see id.* ¶¶ 272-74, 276-77, 292-307, 319-49, 425-581.  First, as in its Initial Answer, this argument is a hypothetical that Colossus may be guilty of inequitable conduct in the *past* for *future* positions it may assert in this case.  Second, it is not inequitable conduct to seek broader patent claims in a continuation application.  But in any event, DK has not pled facts that might plausibly indicate that an examiner would not have allowed the later-issued Asserted Patents' claims but for the applicant's arguments regarding claim scope.

### 1.    DK's Partial and Full Cash Out Theory Is an Untimely Claim Construction Argument

In its First Amended Answer, DK asserts that inventor's counsel distinguished claims of the then-pending '341 patent application from prior art through arguing that the claims cover "both a buy-out offer and a partial buy-out offer."  *See, e.g.*, *id.* ¶ 289; *see also* D.I. 66-5 (December 18, 2014, Response to Office Action) at 11.  Consequently, DK suggests that Colossus should be unable to argue the claim term "initiat[ing] . . . at least one of [the/a] buy-out offer and [a] partial buy-out offer" in the disjunctive, *i.e.*, "initiating at least one of a buy-out offer *or* a partial buy-out offer," because doing so would mean it broadened claim terms and committed inequitable conduct.  *See* D.I. 70 ¶¶ 289, 291, 300, 304, 412.

Simply put, this is not an inequitable conduct argument.  DK does not allege any prior statement to the PTO was a material misrepresentation.  Rather, it assumes that *if* Colossus raises a disjunctive construction, it is *ex post facto* guilty of inequitable conduct.  As in its Initial Answer, DK's logic is flawed.  Inequitable conduct concerns actions taken before the PTO during patent prosecution rather than a claim construction position taken during a later litigation.  *See Exergen*, 575 F.3d at 1328 ("[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."); *St.*

*Jude*, 2014 WL 2622240, at *1.  Indeed, DK presently cannot identify an alleged

misrepresentation or omission because, according to its argument, one will occur *only if*

Colossus adopts an allegedly contrary claim construction position.  But even if Colossus were to

adopt a claim construction position that DK argues is contrary, that cannot retroactively trigger

inequitable conduct during the Asserted Patents' prosecution.  DK's pleading does not provide

facts to support an argument that inequitable conduct can turn on a contingent liability theory.

## 2.    DK's Claim Broadening Argument Legally and Factually Fails

DK's newly-added allegations that the inventor withheld information from the PTO to

achieve a broader claim scope—*i.e.*, the disjunctive construction it maligns—also is not a viable

theory.  *See, e.g.*, D.I. 70 ¶¶ 289, 291, 300, 304, 412, 423, 436-37, 447, 449, 460, 462-63, 470,

472, 474, 489-90, 496, 498, 515-16, 520-21, 527, 529, 543-44, 547-48, 554, 556, 567-70, 577,

579.  As a legal matter, DK is incorrect that seeking a broader patent scope in a continuation

application either is improper or grounds for inequitable conduct.  *See In re Clement*, 131 F.3d

1464, 1469, n.** (Fed. Cir. 1997) ("[I]f an applicant amends a broad claim in an effort to

distinguish a reference and obtain allowance, but promptly files a continuation application to

continue to traverse the prior art rejections, circumstances would suggest that the applicant did

not admit that broader claims were not patentable."); *Theta IP, LLC. v. Samsung Elecs. Co., Ltd.*,

No. 20-00160, 2021 WL 2322936, at *2 (W.D. Tex. June 7, 2021) (rejecting argument that

alleged broadening and information and belief inferences could meet heightened pleading

standard).

DK has not pled plausible facts supporting a theory that the later-issued Asserted Patents'

claims would not have been allowed but for this claim construction issue.  DK's entire argument

is its conclusion that an examiner "would not have allowed" the later-issued Asserted Patents'

claims if they knew "that the claimed 'buy out' could be practiced by a 'full buy-out' alone."

18

*See* D.I. 70 ¶ 437; *see also id.* ¶¶ 425-581.  DK's pleading ignores that the later-issued Asserted

Patents have *different* claims containing *different* limitations relevant to patentability and

sidesteps pleading why later claims devoid of office action responses overcoming Acres would

have found this allegedly broadening claim construction material.  This means DK has not pled

that Acres and Betfair were material to later-issued Asserted Patents' claims.

> ### C.    DK's Inequitable Conduct Counterclaim and Affirmative Defense Should Be Dismissed and Stricken With Prejudice for Futility

DK should not have a third bite at the apple to replead its uncurable inequitable conduct

theories.  The "factors [that a court should] consider in weighing a motion for leave to amend are

well-settled: (1) whether the amendment has been unduly delayed; (2) whether the amendment

would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some

improper purpose; and (4) *whether the amendment is futile*."  *Butamax Advanced Biofuels LLC v.*

*Gevo, Inc.*, No. 11-54, 2012 WL 2365905, at *2 (D. Del. June 21, 2012) (emphasis added)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Grayson v. Mayview State Hosp.*,

293 F.3d 103, 108 (3d Cir. 2002).  "An amendment is futile if it is frivolous, fails to state a claim

upon which relief can be granted, or 'advances a claim or defense that is legally insufficient on

its face.'"  *Livery Coach Sols., LLC v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 648 (D.

Del. 2017) (citing *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006)).  "[T]he

standard for assessing futility of amendment is the same standard of legal sufficiency that applies

under Fed. R. Civ. P. 12(b)(6)."  *Invista*, 2013 WL 12304544, at *3 (citations omitted).

DK's inequitable conduct theories cannot be cured and thus are futile.  First, if the Court

agrees with Colossus concerning DK's partial and full cash out theory being a premature claim

construction argument, then that argument fails as a matter of law, cannot be cured through

repleading, and should be dismissed and stricken with prejudice.  *See supra* Section IV.B.1.

Second, DK's remaining allegations also should be dismissed and stricken with prejudice.   DK already has amended and stands on its amendment.[8]   In repleading, DK added additional argument concerning, *inter alia*, the alleged Betfair reference and the later-issued Asserted Patents' prosecution.   As set forth above, the flaws in DK's Betfair theory are fatal because it has not pled a specter of showing inequitable conduct based on an alleged withholding.   DK pled that Betfair is cumulative of Acres, which is prior art of record in all Asserted Patents.   *See* D.I. 14-2 at 3; D.I. 14-3 at 2; 14-4 at 3; D.I. 14-5 at 3; D.I. 14-6 at 3; D.I. 14-7 at 3; 14-8 at 3.   Betfair also was cited in all the later-issued Asserted Patents, which proceeded Betfair's Australia citation.   *See* D.I. 14-3 at 2; D.I. 14-4 at 2; D.I. 14-5 at 3; D.I. 14-6 at 3; D.I. 14-7 at 3; D.I. 14-8 at 3.   Given DK has failed to plead this argument twice, the Court should close the door on its hope to have inequitable conduct in this case.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Colossus respectfully requests that the Court dismiss with prejudice DK's first Counterclaim (Count I) and strike with prejudice DK's Fifteenth Affirmative Defense.

---

[8] After two attempts, it is well-established that DK has had enough chances such that the Court can conclude amendment would be futile.  *See, e.g.*, *Softview LLC v. Apple Inc.*, No. 10-389, 2011 WL 4571793, at *1 (D. Del. Sept. 30, 2011) (rejecting proposed first amended inequitable conduct defense as futile for failing to allege a plausible inference of intent to deceive); *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, 16-791, 2017 WL 2118314, at *8 (N.D. Cal. May 16, 2017) ("Moreover, Mipox already had an opportunity to amend in response to ITS's first motion to dismiss, suggesting that further leave to amend would be futile."); *Philips N. Am. LLC v. Garmin Int'l, Inc.*, No. 19-6301, 2020 WL 6064006, at *4 (C.D. Cal. 2020) (denying leave to amend to add an inequitable conduct defense through proposed first amended answers).

Dated: February 28, 2023

**OF COUNSEL:**

Michael L. Burns (*Pro Hac Vice*)
Steven M. Kellner (*Pro Hac Vice*)
Gregory Ferroni (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, PA 19103
Telephone: (215) 656-3385
Facsimile: (215) 606-3385
michael.burns@us.dlapiper.com
steven.kellner@us.dlapiper.com
gregory.ferroni@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Stephanie E. O'Byrne*
Brian A. Biggs (DE Bar No. 5591)
Stephanie E. O'Byrne (DE Bar No. 4446)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Tel: (302) 468-5700
brian.biggs@us.dlapiper.com
stephanie.obyrne@us.dlapiper.com

*Attorneys for Plaintiff Diogenes Limited and
Colossus (IOM) Limited*

21